# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WANDA CANFIELD,<br>     *Plaintiff*,<br> v.<br><br>AMICA MUTUAL INSURANCE CO.,<br>     *Defendant*. | CIVIL ACTION<br>NO. 20-2794 |

**PAPPERT, J.**                                  October 2, 2020

## MEMORANDUM

   Wanda Canfield was injured when her vehicle was struck from behind. After the collision, she sued Amica Mutual Insurance Company, her automobile insurance carrier, for breach of contract, breach of the duty of good faith and fair dealing and bad faith. Amica moves to dismiss the bad faith claim, Count III of the Amended Complaint. She also seeks to strike in Count II any request for damages beyond first party medical benefits and the remedies permitted under 75 Pa. C.S. § 1797 and the Count's reference to bad faith. (ECF 7.) The Court grants the motion in part and denies it in part.

## I

   At the time of the September 2016 crash, Canfield carried an Amica policy with $500,000 in tort coverage and $500,000 in underinsured motorist coverage per collision with limits stacked and $1,000,000 in coverage for extraordinary medical benefits. (Am. Compl., ECF 4, at ¶ 8; Am. Compl., Ex. A, ECF 4-1 at 2-4.) The tortfeasor had an insurance policy with a $15,000 liability limit. (Am Compl. ¶ 9.)

   After the collision, Canfield filed a personal injury protection claim with Amica

and a bodily injury claim with the tortfeasor's insurance company. (*See* Am. Compl., ¶ 9.) She notified Amica that she might have a UIM claim because she did not know if the tortfeasor had adequate coverage. (*Id.* ¶ 11.)

In March 2017, Amica asked Canfield's attorney to "forward all medical records and bills pertaining to the" collision. (Am. Compl., Ex. C, ECF 4-1, at 7.) In May 2018, after an independent medical examination, Amica informed Canfield's counsel that the IME "was completely normal" and Dr. I. Howard Levin had determined that her injuries had "resolved" and "no further treatment of any kind would be necessary as the result of [the] auto accident . . . ." (Am. Compl., Ex. I, ECF 4-1 at 13-14.) Amica said it could not "consider payment of any bills for treatment received after May 16, 2018." (*Id.*) In December 2018, Amica "reconsidered [its] position" and agreed to pay some of Canfield's medical bills because an initial denial "based on the findings of Ms. Canfield's IME . . . was sent to the wrong address." (*Id.*, Ex. G. ECF 4-1 at 15.) It also explained that Dr. Levin had reviewed additional medical records from Canfield's hospitalization in October 2018 and concluded that her new symptoms could not be attributed to the 2016 collision. (*Id.*)

Meanwhile, in September 2018, Canfield sued the tortfeasor in state court. The tortfeasor's insurance company settled the claim "for $14,000 of the available $15,000 [under the tortfeasor's] policy." (*Id.* ¶ 39.) In February 2019, Canfield's attorney wrote to Amica's Claim Department about the third-party settlement, rejected Amica's "offer of an additional $10,000," enclosed additional medical reports and suggested Canfield would agree "to a high/low [arbitration] process as long as the numbers are fair." (*Id.*, Ex. D, ECF 4-1 at 9-10.)

In April 2019, Canfield gave Amica a report from Dr. Michael S. Yoon, a neurosurgeon, concluding that she had "failed conservative management and [wa]s ready for surgical intervention." (Am. Compl. ¶¶ 21-22; *see also id.*, Ex. I, ECF 4-1 at 19-21.)  Canfield's counsel wrote that he had received an arbitration proposal from Amica with "authority to participate in high/low Arbitration with parameters of $10,000 to $100,000." (*Id.*, Ex. H, ECF 4-1, at 18.) He declined Amica's "insulting offer," citing "no liability issues in this matter" and Canfield's "debilitating injur[i]es," demanded "the policy limits of $500,000" and requested a response "within the next 10 days." (*Id.* at 18-19.) Amica responded in May 2019 by increasing its settlement offer to $25,000, citing the "low impact accident, a significant pre-accident history, and IMEs conducted by Dr. Levin and Dr. Donahue." (*Id.*, Ex. E, ECF 4-1 at 11.)

In July 2019, Canfield had "disc replacement surgery at C3-4 and fusion." (Am. Comp. ¶ 26.) She "has incurred more than $120,000.00 in medical bills" and alleges she needs continuing physical therapy. (*Id.* ¶¶ 27, 31.) Canfield alleges Amica's actions caused her "to delay her medical treatment" (*id.* ¶ 54), that she "has a swallowing issue as a result of the surgery which has required additional treatment" (*id.* ¶ 68), and that she lost wages due to "difficulty in returning to her job as a piano teacher" because of her injuries from the collision. (*Id.* ¶ 69.) She contends Amica "does not have a reasonable basis for denying . . . benefits under her policy" and that it "knows or recklessly disregarded its lack of reasonable basis when it delayed and denied the *value* of the claim." (*Id.* ¶¶ 75-76 (emphasis added).) Canfield does not allege that Amica has actually and ultimately denied any claim.

In May 2020, Canfield sued Amica in the Philadelphia County Court of Common

3

Pleas and Amica removed the case to this Court. (ECF 1.) After Amica moved to dismiss her original Complaint (ECF 2), she filed her Amended Complaint. (ECF 4.)

II

Count II of Canfield's Amended Complaint alleges a claim under Section 1797 of the Pennsylvania Motor Vehicle Responsibility Law ("MVFRL"), 75 Pa. Cons. Stat. § 1797 (*see* Am. Compl. ¶¶ 49, 60), a claim for breach of the implied contractual duty to act in good faith related to her PIP coverage (*see, id.*, ¶¶ 48, 53, 57), or both. Amica moves to strike Count II's demand for damages "in excess of $75,000" (Def.'s Mot., ECF 7, at 12-13), its demand for treble damages (*id.* at 14-15) and its references to bad faith. (*Id.* at 15-19.) Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a Rule 12(f) motion is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).

A

The MVFRL requires automobile insurers to provide medical benefit coverage "for reasonable and necessary medical treatment and rehabilitative services . . ." after a motor vehicle collision. 75 Pa. C.S. § 1712(1). Amica argues the Court should strike Count II's demand for damages in excess of $75,000 because the demand is outside the scope of damages allowed under Section 1797 of the statute. (Def.'s Mot. at 12-13.) It also argues the Court should strike Canfield's demand for treble damages because she has not alleged facts sufficient to demonstrate Amica's conduct was "wanton." (*Id.* at

14-15.)

Section 1797(b)(4) allows an insured to challenge "an insurer's refusal to pay for past or future medical treatment or rehabilitative services . . . ." 75 Pa. C.S. § 1797(b)(4). If the Court finds that medical treatment or rehabilitative services were "medically necessary, . . . the insurer must pay *to the provider* the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees." *Id.* § 1797(b)(6) (emphasis added). Section 1797(b)(4) provides for "a payment of treble damages *to the injured party*" only for "[c]onduct considered to be wanton." *Id.* § 1797(b)(4) (emphasis added). Wanton conduct is "something different from negligence however gross, – different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor." *Stubbs v. Frazer*, 454 A.2d 119, 120 (Pa. Super. Ct. 1982) (citations omitted). It "exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." (*Id.*)

Canfield is only entitled to pursue the "damages" she demands in Count II if she has pled that Amica's conduct was wanton. She contends her allegations are enough, citing medical reports indicating that she needed surgery and bills for medical care that Amica has not paid "in excess of $120,000," resulting in a $32,000 lien for unpaid medical bills and more than $10,000 in out-of-pocket payments. (Pl.'s Resp., ECF 8 at 12.) However, Canfield has not alleged "enough facts to raise a reasonable expectation that discovery will reveal evidence" that Amica's conduct was wanton, i.e., that it declined to pay for her ongoing medical care with conscious indifference to a high

5

probability that harm would follow. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Absent such alleged facts, Canfield is not entitled to pursue damages under the MVFRL and it is appropriate to strike her demand for damages in any amount – including treble damages – in Count II of her Amended Complaint. *See Rivera v. Dealer Funding, LLC*, 178 F. Supp. 3d 272, 281 (E.D. Pa. 2016) ("A demand for damages that is not recoverable as a matter of law may be stricken pursuant to Rule 12(f).") (citations omitted). Canfield may amend her MVFRL claim to include a demand for treble damages if she is able to allege facts stating a plausible claim that any failure to pay for her medical treatment was the result of Amica's wanton conduct.

### B

Amica asserts that Count II alleges "bad faith without addressing the statutory remedy provided in 42 Pa. C.S. § 8371" by alleging a claim for breach of "good faith and fair dealing." The insurer seeks to strike the allegations because "Pennsylvania law does not recognize a common law remedy for bad faith." (Def.'s Mot. at 16.) Indeed, Pennsylvania common law does not provide a remedy "for bad faith on the part of insurers." *Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (citation omitted). Instead, "[t]here are two separate 'bad faith' claims that an insured can bring against an insurer: a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith tort claim under 42 Pa. Cons. Stat. Ann. Section 8371." *Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d 525, 529 (E.D. Pa. 2013) (citing *Birth Ctr. v. St. Paul Cos., Inc.*, 787 A.2d 376, 390 (Pa. 2001) (Nigro, J. concurring)). Canfield asserts the latter in Count III.

The court construes Count II, which does not explicitly refer to "bad faith," in Canfield's favor, even though her Amended Complaint is not a model of clarity. Although Count II appears to assert a claim under the MVFRL (*see* Am. Compl., ¶¶ 49, 60), it also appears to assert a claim for Amica's alleged breach of the implied contractual duty to act in good faith related to her PIP coverage. (*See id.* ¶¶ 48, 53, 57.) Because Canfield may pursue a claim for breach of her policy's PIP coverage obligations and because motions to strike are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties," the Court will not strike her allegations regarding the duty of good faith and fair dealing in Count II. *McInerney*, 244 F. Supp. 2d at 402.

### III

Pennsylvania law allows a court to award interest, punitive damages and attorneys' fees if it "finds that the insurer has acted in bad faith toward the insured." 42 Pa. Con. Stat. § 8371. Amica seeks to dismiss Canfield's bad faith claim – Count III of her Amended Complaint – pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To withstand dismissal, her Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a [bad faith claim] that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

To the extent the Amended Complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

To begin, unless Amica's "conduct falls outside of the scope of §1797" of the MVFRL, 75 Pa. C.S. § 1797, "and involves a bad faith abuse of the process challenging more than just the insurer's denial of first party benefits," the MVFRL preempts any statutory bad faith claim concerning Canfield's PIP benefits. *Barnard v. Liberty Mut. Ins. Corp.*, No. 18-1218, 2018 WL 6537149, at *6 (M.D. Pa. Nov. 19, 2018); *see Barnum v. State Farm Mut. Auto. Ins. Co.*, 635 A.2d 155 (Pa. Super. Ct. 1993) (holding the provisions of section 1797, and not section 8371, are to be applied to claims for first party benefits under the MVFRL); *see also Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 67 (3d Cir. 1994) ("[T]he specific provisions of 75 Pa. C.S. § 1797 must be deemed an exception to the general remedy for bad faith contained in 42 Pa. C.S. § 8371."); *Metro. Grp. Prop. & Cas. Ins. Co. v. Hack*, 312 F. Supp. 3d 439, 447 (M.D. Pa. 2018) ("Section 8371 bad faith claims remain cognizable when the basis of a benefits denial does not relate to the reasonableness and necessity of treatment, or when an insurer's conduct is obviously not amenable to resolution by

the procedures set forth in Section 1797(b).") (citation and internal alterations omitted). To the extent that the "gravamen of [Canfield's] bad faith claim is the denial of first party medical benefits and nothing more, [Amica's] alleged conduct is within the scope of § 1797 of the MVFRL and therefore [she] is precluded from bringing" such a claim. *Yang v. State Farm Mut. Auto. Ins. Co.*, No. 13-CV-2725, 2013 WL 6147784, at *3 (E.D. Pa. Nov. 21, 2013) (citation and internal quotation omitted).

To the extent that there is anything more to Canfield's bad faith claim, it still cannot withstand dismissal. For any statutory bad faith claim not preempted by the MVFRL to proceed to discovery, Canfield must allege facts that show: (1) Amica did not have a reasonable basis for denying benefits under her policy; and (2) Amica knew or recklessly disregarded its lack of a reasonable basis when it denied the claim. *Rancosky v. Washington Nat'l Ins, Co.*, 170 A.3d 364, 376-77 (Pa. 2017.) "Although the insurer's conduct need not be fraudulent, mere negligence or bad judgment is not bad faith. The insured must ultimately show that the insurer breached its duty of good faith through some motive of self-interest or ill will." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (citation and internal quotation omitted).

Canfield has not alleged that Amica has denied her claim for UIM or PIP coverage. Instead, she alleges it has "delayed" her claim and denied its value. (Am. Compl. ¶ 76.) She disagrees with the amounts Amica has offered to settle her claim but has not alleged facts sufficient to show its valuation is unreasonable. Canfield's subjective belief as to the value of her "claims is not indicative of bad faith "because [Amica's] subjective belief as to the value of the claim may reasonably, and permissibly, differ." *Clarke v. Liberty Mut. Ins. Co.*, No. 18-1925, 2019 WL 522473, at *5 (M.D. Pa.

9

Feb. 11, 2019), reconsid. denied, 2019 WL 1255184 (M.D. Pa. Mar. 19, 2019). To state a bad faith claim, Canfield must do more than call Amica's offers "low-ball." (Am. Compl. ¶ 72.) Her allegations suggest "nothing more than a normal dispute between an insured and insurer." *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 785 (Pa. Super. Ct. 2009); *see also Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 137 (3d Cir. 2012) (explaining that a disagreement over the amount of a settlement, "of course, is not unusual"). "[B]ad faith is not present merely because an insurer makes a low but reasonable estimate of an insured's damages." *Johnson*, 987 A.2d at 784. "[T]he failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith." *Smith*, 506 F. App'x at 137.

Insofar as Canfield contends Amica knew it did not have a reasonable basis for denying "the value of her claim," (Am. Compl. ¶¶ 75-76), her allegations do not support the contention. Amica requested Canfield's medical records and, with Dr. Levin's assistance, assessed her claimed injuries. Her conclusory allegations that Dr. Levin is "a biased IME doctor" (*Id.* ¶ 77(B)), "well-known as [someone] who provides so-called 'Independent Medical Examinations' exclusively for and apparently to the liking of insurance companies such as Amica" (Am. Compl. ¶ 20), do not establish that Amica's assessment of her claim is the result of "some motive of self-interest or ill will." *Nw. Mut. Life Ins. Co.*, 430 F.3d at 137. Nor does Dr. Yoon's recommendation that Canfield was "ready for surgical intervention" (Am. Compl. Ex. I, ECF 4-1 at 19), support a claim that Amica unreasonably relied on Dr. Levin's assessment that her 2018 symptoms could no longer be attributed to the 2016 collision. (*Id.*, Ex. G. ECF 4-1 at 15.) "In the absence of any supporting facts from which it might be inferred that [Amica's]

10

investigation was biased or unreasonable, this type of disagreement in an insurance case is not unusual, and cannot, without more, amount to bad faith." *Gowton v. State Farm Fire & Cas. Co.*, No. 15-1164, 2017 WL 818847, at *4 (W.D. Pa. Mar. 2, 2017) (citations and quotations omitted). Count III of Canfield's complaint is dismissed.

Because courts should freely give leave to amend a complaint when justice so requires, Fed. R. Civ. P. 15(a)(2), Canfield may amend her statutory bad faith claim to the extent it is not preempted by the MVFRL and to the extent she is able to allege facts stating a plausible claim for relief.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.